United States District Court
Southern District of Texas
**ENTERED**
September 27, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:14-314-1 |
| | § | CIVIL NO. 2:16-256 |
| ALFONSO PENALOZA-DUARTE, | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION & ORDER**

Alfonso Penaloza-Duarte (Penaloza-Duarte) filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and a motion for the Court to conduct initial screening pursuant to Rule 4(b). D.E. 57, 60.

**I. BACKGROUND**

Penaloza-Duarte was one of several persons captured while transporting marijuana in the South Texas brush country west of Falfurrias, Texas. He was arrested in March 2014 and later charged with: Count 1) conspiracy to possess with intent to distribute more than 100 kilograms of marijuana and Count 2) possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). He was also charged in Count 3 with illegal reentry in violation of 8 U.S.C. § 1326. D.E. 15.

In July 2014, Penaloza-Duarte pleaded guilty to Count One pursuant to a written plea agreement. D.E. 22. The Probation Department prepared a Presentence Investigation Report (PSR) and later an amended PSR. His base offense level was calculated based upon the quantity of marijuana, 169.06 kilograms, which resulted in an offense level of 24. After credit for acceptance of responsibility, Penaloza-Duarte's total offense level was 21; however, he had two previous controlled substance convictions that qualified him as a career offender under § 4B1.1 of the sentencing guidelines. As a career offender, his offense level increased to 34, before

1

acceptance of responsibility. Penaloza-Duarte had numerous criminal convictions that totaled nine points and would have resulted in a criminal history category of IV, except that career offenders are automatically assigned a category VI. His sentencing guidelines range was 188 to 235 months, with a minimum mandatory sentence of 60 months imprisonment. At sentencing in November 2014, the Court sentenced Penaloza-Duarte to 152 months, followed by four years' supervised release, and a special assessment of $100. D.E. 40, pp. 14-15.

Penaloza-Duarte appealed, despite his waiver of appeal in his plea agreement. The Fifth Circuit dismissed the appeal as frivolous on June 16, 2016. The present § 2255 motion was filed on June 21, 2016. It is timely.

## II. MOVANT'S CLAIMS

Penaloza-Duarte challenges his sentence pursuant to *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc) claiming that his controlled substance convictions are not qualifying predicate convictions.[1] He also argues that *Johnson v. United States*, 135 S.Ct. 2551 (2015), does not support his enhancement as a career offender. He seeks resentencing without the career offender enhancement. He also argues that appointed counsel did not explain the federal law of conspiracy to him which prevented his guilty plea from being voluntary. Finally, Penaloza-Duarte argues that 21 U.S.C. §§ 846, 841 are unconstitutional.

## III. ANALYSIS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the

---

1. *Simmons* reversed and remanded to the district court for resentencing based upon an enhancement by a North Carolina drug sentence. Penaloza-Duarte's predicate convictions occurred in federal and state court in South

statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Involuntary Guilty Plea

Penaloza-Duarte does not address his waiver of the right to file a § 2255 motion. Although he claims that counsel was ineffective before he entered his guilty plea and signed the plea agreement, his claims of ineffective assistance do not automatically relieve him of his waivers of appeal and § 2255 post-conviction proceedings. *See United States v. White*, 307 F.3d 336, 343–44 (5th Cir. 2002) (An ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself."). In *White*, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." *Id*. at 343 (internal citations omitted).

The Court asked Penaloza-Duarte if he had received his Indictment, and whether counsel read it to him in Spanish and discussed it with him. Penaloza-Duarte testified "Yes, sir." D.E. 50, p. 7. The Court asked Penaloza-Duarte whether he was satisfied with his counsel's services and he again testified, "Yes, sir." *Id*., p. 8. Penaloza-Duarte further testified that Counsel read the plea agreement to him in Spanish and explained it to him, he understood it, he signed it voluntarily, and no one had made promises to him other than those within in the plea agreement. *Id*., pp. 9-11. The Court then reviewed the waivers of appeal and § 2255 rights.

---

Carolina. *Simmons* does not apply.

>THE COURT: For each of you, on page 3 of your
>agreement in paragraph 7 there is a waiver of certain rights
>to appeal.
>Mr. Penaloza, were you aware that this waiver
>was in your agreement before you signed it?
>DEFENDANT PENALOZA: Yes, sir.
>THE COURT: Do each of you understand by signing
>this agreement that you waive not only your right to directly
>appeal your conviction and your sentence but you also waive
>the right to collaterally attack it under 28, United States
>Code, Section 2255?
>Mr. Penaloza, were you aware of that?
>DEFENDANT PENALOZA: Yes, sir.
>    ***
>THE COURT: Mr. Penaloza, have you discussed the
>waiver with Mr. Reyna?
>DEFENDANT PENALOZA: Yes, sir.
>    ***
>THE COURT: Mr. Penaloza, do you feel like you
>understand the waiver and how it may affect your rights in
>this case?
>DEFENDANT PENALOZA: Yes, sir.
>THE COURT: Do you have any questions you want to
>ask me about the waiver?
>THE DEFENDANT: No, sir.

*Id*., pp. 10–12.

The Court advised Penaloza-Duarte of his trial rights and his right to remain silent, which he waived. *Id*., pp. 15–16. The Court recited the elements of the conspiracy charge,[2] and Penaloza-Duarte testified he understood. *Id*., p. 16.

---

>2. THE COURT: Mr. Penaloza-Duarte, the government must
>prove beyond a reasonable doubt that you committed this
>crime. It would do so by establishing through evidence that
>you committed the elements of the offense. Your elements, to
>make sure you understand, are as follows: That you conspired
>to knowingly possess a controlled substance. A conspiracy is
>an agreement between two or more persons to commit some
>federal crime. In this case it is to knowingly possess with
>intent to distribute marijuana.
>
>The government must established that the
>subject of your conspiracy was marijuana, which is a Schedule
>I controlled substance. It must also establish that you knew
>of the unlawful purpose of the conspiracy or the agreement

4

The Court advised Penaloza-Duarte that his maximum possible punishment was 40 years' imprisonment with a minimum of 5 years' imprisonment, a term of at least 4 years' supervised release, a potential fine of up to $5 million, and a $100 special assessment. *Id.*, pp. 12–13. The Court also discussed the manner in which Penaloza-Duarte's sentence would be calculated.

The Government recited the facts it expected to prove at trial, including that Penaloza-Duarte was found with three juvenile aliens, his cousins, and was near six bundles of marijuana with a net weight of 169.06 kilograms. *Id.*, p. 18. All four were citizens of Mexico who had crossed into the United States illegally. Penaloza-Duarte agreed the facts were correct and pleaded guilty to possession with intent to distribute more than 100 kilograms of marijuana. *Id.*, p. 21.

Penaloza-Duarte's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002); *see also United States v. Maldonado-Rodriguez*, 64 F.3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representations at plea hearing that he had not been pressured).

Penaloza-Duarte's testimony that he understood he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motion is all that is required for his waiver to be enforceable. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) ("[A] defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and

---

and that you joined in it willfully, that is, with the intent
to further its unlawful purpose. And in your case the
government must establish that the amount of marijuana was
more than 100 kilograms.

5

voluntary."). The Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. *Id*. The Court also finds that Penaloza-Duarte's guilty plea was knowing and voluntary. His remaining claims fall within the scope of his waiver and are barred from consideration.

### C. *Johnson* Claims

The *Johnson* Court held that the residual clause defining a crime of violence in 18 U.S.C. § 924(e) was unconstitutionally vague. *Johnson v. United States*, 135 S.Ct 2551 (2015). However, Penaloza-Duarte was not convicted under that statute, nor was he sentenced or enhanced based upon a crime of violence. Instead, his offense level was enhanced based upon his previous controlled substance convictions. Even if *Johnson* applied to the Sentencing Guidelines—the Fifth Circuit holds it does not [3]—*Johnson* has no applicability to Penaloza-Duarte's enhancement.

### IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Penaloza-Duarte has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). As to

---

*Id*.
   3. *In re Arnick*, 826 F.3d 787 (5th Cir. 2016) (per curiam) ("*Johnson* did not address Section 4B1.2(a)(2)

claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court finds that Penaloza-Duarte cannot establish at least one of the *Slack* criteria. Accordingly, he is not entitled to a COA as to his claims.

## V. CONCLUSION

The Court has reviewed the § 2255 motion and concludes that summary dismissal is appropriate because "it plainly appears from the motion . . . and the record of prior proceedings that the moving party is not entitled to relief. . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts (2016) (2255 Rules).

Accordingly, Penaloza-Duarte's motion for initial screening (D.E. 60) is **GRANTED**; his motion to vacate, set aside, or correct sentence (D.E. 57) is **DENIED** with prejudice pursuant to Rule 4(b), and he is **DENIED** a Certificate of Appealability.

It is so **ORDERED**.

**SIGNED** this 26th day of September, 2016.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

---

of the Guidelines. Nor has the Supreme Court held that a Guidelines enhancement that increases the Guidelines range implicates the same due process concerns as a statute that increases a statutory penalty." (citations omitted)).